# United States Court of Appeals
## For the First Circuit

No. 04-2095

UNITED STATES OF AMERICA,

Appellee,

v.

CHAD BARTOS,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MAINE

[Hon. Gene Carter, <u>Senior U.S. District Judge</u>]

Before

Selya, Lynch, and Howard, <u>Circuit Judges</u>.

John J.E. Markham, II, with whom Markham & Read, was on brief, for appellant.
Margaret D. McGaughey, Appellate Chief, with whom Paula D. Silsby, United States Attorney, was on brief, for appellee.

July 19, 2005

**HOWARD**, **Circuit Judge**.  Chad Bartos was convicted of being a felon in possession of a firearm, see 18 U.S.C. § 922(g)(1), and possession of a stolen firearm, see 18 U.S.C. § 922(j).  Bartos seeks a new trial, arguing that his convictions were tainted by three alleged errors: an evidentiary ruling that was outside the judge's discretion, the judge's improper coercion of a witness into retracting testimony that was favorable to the defense, and the judge's unbalanced and prosecution-friendly trial management rulings.

There was evidence from which the jury reasonably could have concluded that Bartos stole a .22 caliber Ruger revolver from his uncle while the two were visiting a relative's hunting camp in northern Maine.  Crucial inculpatory evidence came from three witnesses -- Bartos's twin cousins and a friend of theirs -- who testified that, shortly after the theft, Bartos brandished the firearm in front of them in a Lewiston motel room.  One of Bartos's cousins (Jeff Bartos) and the friend (Joey White) also testified that Bartos expressed an intention to "take" the firearm with him to another location.  Bartos's first two appellate arguments involve this "intention" evidence and the manner in which it came into the record.

Bartos first argues that this evidence should not have been admitted at all.  Bartos says that the evidence of his intention to take the firearm to another location was of little

-2-

relevance to whether he <u>possessed</u> the firearm unlawfully (as was charged), and that the evidence was highly prejudicial because it might have led the jury to speculate that he was planning to use the gun to commit a violent felony. Consequently, Bartos contends, the trial judge abused his admittedly wide discretion in declining to exclude the evidence under Fed. R. Evid. 404(b) or 403. <u>See, e.g.</u>, <u>United States</u> v. <u>Balsam</u>, 203 F.3d 72, 84 (1st Cir. 2000).

We start by observing that this argument has not been preserved for plenary appellate review. The issue was joined below only at a pretrial conference, where Bartos moved to exclude anticipated testimony that he had stated to his cousins and their friend an intention to use the stolen firearm to rob Massachusetts drug dealers, whom he described as "niggers," of guns and money. While noting the "arguable relevance" of the evidence, Bartos took the position that such testimony was highly prejudicial "other crime" evidence that should be excluded under Rule 404(b) and Rule 403. The government countered that the evidence was admissible to show that Bartos had a plan for the gun, which in turn tended to demonstrate intentional and knowing (as opposed to accidental) possession. The government did, however, offer to instruct the witnesses not to use the inflammatory term "niggers."

At this point, the court stated:

> Why isn't [sic] just simply the fact that he said, I have - I want the gun because I have use for it in Massachusetts, period, that shows his - that's all you need to establish

> what you want to establish, the rest of it
> really does get involved in the question about
> other criminal conduct, not charged, and into
> the inflammatory - the use of the word
> "nigger."

The court then asked government and defense counsel whether they were satisfied with having the witnesses testify that Bartos had stated that he had a use for the gun in Massachusetts. Government counsel said that such a ruling would satisfy him, and defense counsel added, without qualification, "I accept that ruling." At trial, nobody objected when Jeff Bartos and Joey White testified that Bartos told them that he was going to "take" the gun with him -- somewhere outside the motel, according to Jeff Bartos; to Massachusetts, according to Joey White.

At best, the foregoing describes a situation involving a forfeited claim of error. See generally United States v. Olano, 507 U.S. 725, 733 (1993) (discussing the difference between waived and forfeited arguments). Such a claim can ground a vacatur or reversal under Fed. R. Crim. P. 52(b), but only if the underlying error is plain and has affected the defendant's substantial rights by affecting the outcome of the trial court proceedings. See Olano, 507 U.S. at 734-35. Even then, relief under Rule 52(b) is discretionary and is only to be awarded in the event of a miscarriage of justice -- i.e., where the error has seriously affected the fairness, integrity, or public reputation of judicial proceedings. See id. at 735-37.

The admission of the testimony about Bartos's plan for the gun was not error, let alone plain error. The evidence was, as the government argued prior to trial (and as Bartos all but conceded), relevant to Bartos's intent and knowledge; it helped to explain why he committed the charged crimes. See Fed. R. Evid. 404(b) (evidence of "other crimes, wrongs, or acts" not admissible to prove the character of a person in order to show action in conformity therewith, but admissible for other purposes, including intent and knowledge). Moreover, the district court took pains to minimize its potentially prejudicial impact, ordering that the witnesses testify only that Bartos had "use for" the gun in Massachusetts (and not that he planned to use it to commit a racially motivated violent crime). And the testimony, as it came in, was even more benign. As we have stated, the testimony was only that Bartos intended to "take" the gun with him to another location; no witness testified that he planned to "use" the firearm in any way.

Bartos's next argument concerns what he describes as the district court's improper coercion of his cousin, Jeff Bartos, into effectively rescinding testimony that Bartos had said nothing about his plans for the gun. Invoking Webb v. Texas, 409 U.S. 95 (1972) (per curiam), which held that a Texas trial judge deprived a defendant of due process by intimidating a defense witness from offering testimony favorable to the accused, see id. at 95-98,

-5-

Bartos says that his constitutional rights -- Bartos does not specify the source of the rights -- were violated during the course of a colloquy that took place between the trial judge and his cousin outside the presence of the jury. We set forth the colloquy in context, noting that, at the pretrial conference, the government asked for and received permission to ask leading questions of Jeff Bartos, who is bipolar and suffers from manic depression:

> Q (by [Government Counsel]): Just answer my question yes or no, did [Bartos] say that he wanted to take the gun to Massachusetts?
>
> A: Not directly I guess. I don't --
>
> Q: Did he say he wanted to take the gun somewhere else, yes or no?
>
> A: I don't think he said exactly he's going to take it to Mass.
>
> THE COURT: Yes or no.
>
> THE WITNESS: No. I don't know how to answer it.
>
> Q (by [Government Counsel]): Did he say he wanted to take the gun somewhere else, yes or no?
>
> A: I guess he was going to take it with him somewhere.
>
> THE COURT: The question was, did he say that he wanted to take the gun somewhere else? Yes or no.
>
> THE WITNESS: I guess no.
>
> Q (by [Government Counsel]): I'm not asking for his exact words.
>
> A: All right.

Q: Did he say that he wanted to take the gun some place other than [the motel where Jeff testified that Bartos had brandished the weapon] and do something with it?

THE COURT: I'm going to excuse the ladies and gentlemen of the jury momentarily. Would you take them, Mr. Officer, to the jury room, and please don't discuss the case.

[JURY LEAVES]

THE COURT: Mr. Bartos, I've been doing this a long time, almost as long as you've been alive, do you know that? I think I have a pretty good idea where somebody is playing fast and loose with the truth or evading the questions.
You took an oath when you began your testimony to tell the truth, the whole truth, and nothing but the truth so help you God.

THE WITNESS: But --

THE COURT: Just a minute. I'm not satisfied that you're doing that. So I'm going to bring the jury back and afford [government counsel] an opportunity to ask you further questions.

THE WITNESS: Okay.

THE COURT: I ask you to bear this admonition in mind when you answer those questions. Do you understand me?

THE WITNESS: Yes.

THE COURT: Bring back the jury.

[DEFENSE COUNSEL]: Pardon me, your Honor, before --

THE COURT: Yes.

[DEFENSE COUNSEL]: Defense wants to be sure that the witness doesn't feel in some way

intimidated, there's a particular answer he's supposed to give.

THE COURT: I have not suggested to him --

THE WITNESS: Oh, no –

THE COURT: Just a minute. I'm not suggesting to him and he understands that, do you not, you answer, give any particular answer to a question. I'm simply telling you to answer them honestly and fully as they are asked to you as you can do.

THE WITNESS: Okay.

THE COURT: Do you understand that? Does that solve the problem.

[DEFENSE COUNSEL]: Thank you . . . .

DIRECT EXAMINATION CONTINUED

Q: So Mr. Bartos, with respect to the firearm, did Chad Bartos say he was going to take the gun out of the motel.

A: Yes.

Q: And did he have -- did he tell you that he had a purpose for the gun, yes or no? Do you understand my question.

A: Yes. No.

The premise of Bartos's argument with respect to this colloquy -- a colloquy that prompted neither an objection nor a motion for a mistrial -- is that, against expectations, Jeff Bartos testified that Bartos said nothing about his plans for the gun in the motel room. Bartos contends that the trial judge did not believe this testimony; that he excused the jury to express his

disbelief and to warn Jeff to tell the truth; and that, intimidated, Jeff reversed course and gave a variant of the expected testimony.  In Bartos's telling, defense counsel's eventual expression of concern and the judge's response were too little, and came too late, to cure the damage that had been done.

We reject this argument because we do not accept the premise on which it is built.  Jeff Bartos's testimony prior to the trial judge's intervention does not contain an unequivocal statement that Bartos said nothing about his plans for the gun; it contains only statements suggesting confusion and discomfort with providing an unequivocal yes or no answer to the questions being posed.  The trial judge read evasiveness into Jeff's hesitancy, and we are not inclined to reject his on-the-spot judgment.  But a second possibility is at least worth mentioning:  that Jeff was prepared for the specific question discussed at the pretrial conference -- whether Bartos had expressed an intention to use the firearm to rob Massachusetts drug dealers -- and became confused when the question was posed at a significantly higher level of generality.  In any event, on our reading of the record, this is not a situation in which a witness intended to give exculpatory testimony but was dissuaded from doing so by a trial judge who disbelieved him.  Cf. United States v. Hoffman, 832 F.2d 1299, 1303-05 (1st Cir. 1987) (conduct by the sovereign alleged to interfere with an accused's right to present a defense must

actually cause the loss or erosion of evidence that is both material and favorable to the accused).

Bartos's final argument -- that the trial judge was heavy handed and tilted in favor of the prosecution in its trial management rulings -- depends heavily on our having accepted the premise, if not the conclusion, of his second argument.  For reasons already explained we have rejected that premise.  We need only add that we have read the trial transcript with care and are quite comfortable that the district court's various trial management rulings, including all of those referenced in Bartos's brief, were well within its discretion.  Cf. Loque v. Dore, 103 F.3d 1040, 1045 (1st Cir. 1997) (noting that a trial judge has wide discretion to interject clarifying questions or otherwise to expedite the pace of a trial).

**Affirmed**.