# United States Court of Appeals
## For the First Circuit

No. 08-1224

UNITED STATES OF AMERICA,

Appellee,

v.

ANTHONY HOSEA BURNETT,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW HAMPSHIRE

[Hon. Paul Barbadoro, U.S. District Judge]

Before

Boudin, Hansen,[*] and Lipez,
Circuit Judges.

Royston H. Delaney, with whom Robert M. Thomas, Jr. was on brief, for appellant.
Aixa Maldonado-Quiñones, with whom Thomas P. Colantuono, United States Attorney, was on brief, for appellee.

September 1, 2009

[*]Of the Eighth Circuit, sitting by designation.

**HANSEN**, **Circuit Judge**.  Following a jury trial, Anthony Burnett was convicted of conspiring to distribute 50 or more grams of cocaine base (crack cocaine), 21 U.S.C. §§ 841(a)(1) & 846 (2006), possessing with the intent to distribute 50 or more grams of crack, 21 U.S.C. § 841(a)(1), possessing a firearm in furtherance of a drug trafficking crime, 18 U.S.C. § 924(c), use of a firearm in relation to a drug trafficking crime, 18 U.S.C. § 924(c), and being a felon in possession of a firearm, 18 U.S.C. § 922(g)(1).  Based on Burnett's stipulation to two prior felony drug offenses, Burnett received a mandatory life sentence, 21 U.S.C. §§ 841(b), and concurrent 60-month sentences on two of the gun charges, 18 U.S.C. § 924(c), to be served consecutively to the life sentence.  On appeal, Burnett seeks a new trial based on two evidentiary rulings, one in which the district court allowed a Government witness to testify about seeing Burnett in possession of a small baggy containing a white substance without establishing that the substance was cocaine, and one in which the district court allowed another witness to testify about death threats Burnett made against the witness and her daughter.  We affirm Burnett's convictions.

I.

Richard "Dickey" Post went into hiding because he owed money to Burnett for drugs.  Burnett and two other men, Juan Feliciano and Quinta Parker, went looking for Post at Post's

- 2 -

apartment and found Post's girlfriend, Carrie Davis, and Post's sister, Cynthia Strong, removing Post's items from his apartment. Burnett confronted the two women about Post's whereabouts, pointed at Ms. Davis and stated "yo bitch," and exposed a handgun concealed in his waistband. Davis became upset, and Ms. Strong told the men to leave. Strong followed the men down the road, took down the license plate number of the truck the men left in, and called the police.

An alert went out to local police departments, and an officer with the Dover Police Department located the truck in the parking lot of the Dover Comfort Inn. The night clerk, Anne Marie Benson, directed two officers to the room to which the truck was registered. The officers knocked on the door to the room, noticing a strong odor of freshly burnt marijuana. Burnett finally opened the door nearly ten minutes later. Burnett and the three other occupants of the room, Feliciano, Parker, and Kimberley Holland, were detained outside the room while the officers applied for a search warrant. The officers subsequently recovered a safe from the room, which contained a Cobra .32 caliber handgun, $3,000 in cash, and more than 500 grams of crack cocaine packaged in 281 plastic bags. Parker's fingerprints were the only ones found on the safe. The officers also recovered a black leather jacket containing $2,750 in cash from the room. Burnett, Feliciano, Parker, and Holland were arrested following the search.

While Burnett was detained during the search of the hotel room, he asked Joanne Rousseau, his girlfriend at the time, who arrived at the hotel after hearing over police scanners that the police were looking for Burnett, to tell the police officers that he had been with her earlier that evening. He also asked her to get rid of "those things" in the trunk of his car. The following day, Rousseau and three other individuals took a safe out of the trunk of Burnett's car, which was still in the Comfort Inn parking lot. The safe contained two guns, one that Burnett had traded for drugs and one that Rousseau had given to Burnett as a gift.

Burnett was indicted on various drug and firearm charges and proceeded to trial. The Government introduced the evidence seized from the hotel room. Ms. Holland, who testified under a letter of use immunity, linked the drugs found in the room to Burnett when she testified that Burnett was packaging the cocaine in small baggies when the officers knocked on the hotel door and he grabbed the baggies and a gun and gave them to Parker to conceal in the safe before opening the door for the officers. Several other witnesses testified about their drug dealings with Burnett in the past, including Ms. Rousseau. Rousseau also testified that Burnett had asked her to make up an alibi and to get rid of "those things" in the trunk of Burnett's car, and she identified the black jacket found in the hotel room containing $2,750 in cash as belonging to Burnett. Ms. Benson, the hotel clerk, testified that Burnett was

a regular at the hotel, always paid with cash, and that she once saw him drop a small baggy containing a white substance as he was exiting the elevator in the hotel.

## II.

Burnett first challenges the testimony offered by Ms. Benson, the clerk at the hotel where the police found Burnett in a room with half a kilo of crack cocaine, in which she testified about an incident when she saw a little baggy containing a "white substance" fall out of Burnett's pocket when he stepped out of the elevator. Rather than tell Burnett he lost something, Benson picked up the baggy and then flushed it down a toilet. The district court sustained Burnett's objection when the witness was asked what she thought was in the baggy, but the court overruled his objection when Benson was asked if she was suspicious about what she picked up, to which she responded, "Yes." On cross-examination, Burnett's counsel questioned why she did not tell Burnett he had dropped something, and Benson responded, "I knew it was drugs." The district court overruled Burnett's objection to her response because his counsel's questioning had invited the response.

Burnett claims that the district court abused its discretion, see United States v. Manqual-Santiago, 562 F.3d 411, 425 (1st Cir. 2009) (standard of review), petition for cert. filed, __ U.S.L.W. ___, (U.S. July 27, 2009) (No. 09-5608), when it

admitted Benson's testimony about the baggy, arguing the evidence was irrelevant under Federal Rules of Evidence 401 and 402. He claims that the evidence was irrelevant because no one ever testified that the substance in the baggy was in fact cocaine. Burnett complains that the evidence left the jury to speculate that this witness, who according to Burnett was the only "respectable lay witness" (meaning not a government agent or a drug dealer/user turned witness), saw Burnett in actual possession of cocaine even though the substance was never identified as cocaine.

The Rules of Evidence define relevant evidence as "evidence having <u>any</u> tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401 (emphasis added). Each specific item of evidence offered need not "be sufficient to prove the case standing by itself" before it is admissible. <u>United States</u> v. <u>Vigneau</u>, 187 F.3d 82, 87 (1st Cir. 1999) (holding that evidence of calls made from defendant's residence to coconspirators was admissible even though there was no evidence that defendant was the one who made the calls). Rather, it is enough that the piece of evidence has some bearing on a matter of consequence to the case. Juries are asked every day to consider circumstantial evidence as they determine whether a defendant has committed a crime.

The fact that the substance in the baggy about which the hotel employee testified was not proven to be cocaine may diminish the weight a fact finder will give the evidence, but it did not make the evidence completely without value. This evidence tended to make the existence of the fact that Burnett was involved in a conspiracy to distribute cocaine more probable than if the evidence had not been admitted. Four people were found in a hotel room with over 500 grams of crack cocaine, which was packaged in small baggies and locked in a safe. The prosecution had to establish not only that Burnett was in the room, but that he was involved in the conspiracy to possess and distribute the cocaine. The fact that Burnett was seen in the same hotel with a small baggy containing a white substance, even though that substance was not identified, provides circumstantial evidence which a jury could find corroborated Holland's testimony that Burnett was the one packaging the crack cocaine. See United States v. Searing, 984 F.2d 960, 965-66 (8th Cir. 1993) ("[Defendant]'s bagging of a substance which could have been narcotics was indeed relevant to his knowledge and participation in such an enterprise. The neighbor's inability to definitely identify the substance . . . went to the weight and credibility of her testimony, not its relevance.").

## III.

Burnett also brings a Rule 403 challenge to the testimony offered by Ms. Rousseau, a prosecution witness and Burnett's former

- 7 -

girlfriend, about death threats that Burnett made against her and her daughter.  See Fed. R. Evid. 403 (excluding relevant evidence if its probative value is substantially outweighed by unfair prejudice).  Because Burnett did not object to this testimony at trial on the basis of its prejudicial effect, our review is for plain error.  See United States v. Shoup, 476 F.3d 38, 42 (1st Cir. 2007); Fed. R. Crim. P. 52(b).  We may reverse only if: "(i) there was error; (ii) the error was obvious; and (iii) the error affected [Burnett]'s substantial rights by altering the outcome of the trial."  Shoup, 476 F.3d at 42.  Even then, we are not required to correct a plain error, and we will exercise our discretion only as necessary to prevent a miscarriage of justice.  See United States v. Olano, 507 U.S. 725, 735-36 (1993).

Before Rousseau was allowed to testify about communications she had had with Burnett prior to the trial, the district court conducted voir dire with her outside of the presence of the jury. Rousseau explained to the court that she had received written and verbal communications from Burnett and that she did not decide to cooperate with the Government in Burnett's case until after he made the threat against her daughter.  Burnett's only objections to the proffered testimony were a Rule 16 discovery challenge, which was overruled, and a concern about the possible reference to Burnett's incarceration.  At Burnett's request, the district court instructed the jury not to draw any inferences about

- 8 -

Burnett's guilt from the fact that he was incarcerated at the time he made the statements to Rousseau.

Rousseau then testified in front of the jury that prior to Burnett's trial, she was being detained at the same correctional facility as Burnett. During that time Burnett sent Rousseau a note that stated, "only you can prevent forest fires, Joe [sic]. You hold the match." At the time, Rousseau had refused to cooperate with the Government in Burnett's case. A few months later, while Rousseau was still not cooperating with the Government, Burnett screamed at her that he "will have my people come up, take you and your daughter out." Rousseau testified that "[a]t that point, that's when I contacted my lawyer and told him I would cooperate."

While evidence that a defendant threatened a witness prior to trial cannot be introduced to show the defendant's propensity to commit bad acts, see Fed. R. Evid. 404, such evidence can be introduced for other purposes, such as demonstrating consciousness of guilt by showing the lengths to which a defendant will go to keep damaging testimony out of his trial, see United States v. Rosa, 705 F.2d 1375, 1377 (1st Cir. 1983) (per curiam); United States v. Monahan, 633 F.2d 984, 985 (1st Cir. 1980) (per curiam). Such evidence can be highly prejudicial, however, and it "should not be admitted if its probative value is 'substantially outweighed' by the danger of undue prejudice." See Rosa, 705 F.2d at 1377 (quoting Fed. R. Evid. 403).

Burnett argues that the district court did not weigh the probative value of the evidence against its unfair prejudice as required by Rules 403 and 404. The reason the district court did not make explicit findings concerning how the factors balanced against each other was because Burnett made no objection to the evidence on the basis of unfair prejudice. Nonetheless, the district court did voir dire the witness outside of the presence of the jury before allowing her to testify about the threats. We interpret the district court's decision to allow Rousseau to testify about the threat as an implicit finding by the district court that the probative value of the evidence was not substantially outweighed by any unfair prejudice. See id. at 1378 (The district court's "invitation to Skelton's attorney to request a limiting instruction if desired suggests that he had come to the conclusion that the danger of unfair prejudice did not outweigh the probative value of the evidence. The judge had no need to be more explicit because . . . defense counsel did not object to the evidence on the basis of unfair prejudice.").

While death threats against a witness, particularly threats against a witness's children, can be inflammatory, any evidence of such threats is not so prejudicial per se that the unfair prejudice from the threat always substantially outweighs its probative value. We must also look at whether the jury heard graphic details of how the threat would be carried out, see United

- 10 -

States v. Gonsalves, 668 F.2d 73, 75 (1st Cir.) (distinguishing cases involving a detailed description of an attempt to murder a witness), cert. denied, 456 U.S. 909 (1982), whether the threat was made as an emotional or impulsive reaction, see Rosa, 705 F.2d at 1378 (noting that impulsive threats are less inflammatory than calculated, advanced plans to murder a witness), and how important the evidence about the threat was to the Government's case, cf. United States v. Pina, 844 F.2d 1, 9 (1st Cir. 1988) ("[A] threat made *after* a witness has already testified does not demonstrate that the defendant is willing to take action to prevent the introduction of relevant evidence . . . [and] any probative value of the evidence is outweighed by its inflammatory potential."). While the Government's need for the evidence is one factor we consider, we decline Burnett's suggestion that evidence of death threats against witnesses should be admissible only when there is a "clear need for the prosecution to use such evidence." United States v. Check, 582 F.2d 668, 685 (2d Cir. 1978).

We accept that Burnett's threat was inflammatory because it was aimed at Rousseau's daughter. Nonetheless, the threat did not convey graphic details or suggest a specific, premeditated plan to carry out the threat. Nor did it unnecessarily paint Burnett as an "unusually violent person or as a cold-blooded killer." Gonsalves, 668 F.2d at 75. Further, the threat can fairly be read as an impulsive reaction, shouted through a closed jailhouse door.

- 11 -

Finally, Ms. Rousseau's testimony about the threat was important to the Government's case to show that Burnett was trying to keep other evidence she knew about out of his trial-evidence that only she had to offer. It also helped to establish Rousseau's motive for testifying against Burnett. Rousseau's credibility was critical to the Government as Rousseau was the witness who identified Burnett's jacket found in the hotel room and who identified the guns taken from Burnett's car as belonging to Burnett. As in Rosa, the Government's case rested largely on Burnett's coconspirator's testimony linking Burnett to the drugs found in the safe. The factors that the district court would have explicitly considered had Burnett made a Rule 403 objection do not so clearly weigh on the side of unfair prejudice that we can say that the district court plainly erred in allowing Rousseau to testify about the threat. See Shoup, 476 F.3d at 43 (concluding that the district court's admission of a 911 tape was not plain error where there was no bright line test precluding the evidence and the court considered the proper factors in reaching its conclusion that the tape met the excited utterance hearsay exception).

IV.

We have considered the cumulative effect of the claimed evidentiary rulings, see United States v. Villarman-Oviedo, 325 F.3d 1, 18 (1st Cir. 2003), and conclude that Burnett received a fair trial. We have also considered the arguments in Burnett's pro

- 12 -

se brief, arguments we find to be meritless for both procedural and substantive reasons. The district court's evidentiary rulings are upheld, and Burnett's convictions are affirmed.

Affirmed.