# United States Court of Appeals
## For the First Circuit

No. 05-1054

UNITED STATES OF AMERICA,

Appellee,

v.

COREY RONDEAU,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Nathaniel M. Gorton, U.S. District Judge]

Before

Torruella, Circuit Judge,

Cyr, Senior Circuit Judge,

and Howard, Circuit Judge.

Beverly Chorbajian for appellant.
Cynthia A. Young, Assistant United States Attorney, with whom Michael J. Sullivan, United States Attorney, was on brief, for appellee.

November 23, 2005

**HOWARD, Circuit Judge.**  Asserting that the district court erroneously permitted the government to present hearsay evidence at his revocation hearing, Corey Rondeau appeals from a final judgment revoking his supervised release.  We affirm.

**I.**

In May 1999, Rondeau pleaded guilty to conspiracy to possess and distribute cocaine base and possession of cocaine base with the intent to distribute.  See 21 U.S.C. §§ 841(a)(1) & 846. He was sentenced to 65 months of imprisonment and five years of supervised release.

On July 17, 2004, after Rondeau had served his initial prison sentence and while on supervised release, he was arrested by the Worcester, Massachusetts police for committing an assault with a dangerous weapon.  The United States Probation Office petitioned the district court to revoke Rondeau's supervised release, alleging that Rondeau had committed two grade A violations (the assault and illegally possessing a firearm) and two grade C violations (failing to participate in a drug test and failing to meet with a probation officer as scheduled).[1]

---

[1]Under the relevant provisions of the United States Sentencing Guidelines, violations of supervised release are classified into three grades: A, B, and C.  Grade A violations include the commission of a violent felony.  Grade C violations include violations of drug testing and reporting conditions.  If the court finds a grade A violation, it must revoke the defendant's release, but it need not to do so for a grade C violation.  If two or more separate violations have occurred, the more (or most) serious violation controls the punishment.  See U.S.S.G. §§ 7B1.1 & 7B1.3

-2-

In December 2004, the district court held an evidentiary hearing on the government's motion to revoke Rondeau's supervised release. Rondeau admitted the grade C violations but denied the grade A violations. The district court thus only heard evidence related to the assault and the unlawful possession of a firearm.

The government relied on the testimony of Sergeant Michael McKiernan of the Worcester Police Department. McKiernan testified that, on July 17, 2004, he became involved in the investigation of an incident at 128 Chino Street in Worcester. In the early morning hours of July 17th, the police received two 911 calls. Several officers, not including McKiernan, responded to the calls and, on arriving at the scene, were informed by Marsha Williams, one of the callers, that Rondeau had come to her apartment building looking for his girlfriend. According to Williams, when she told Rondeau that his girlfriend was not there, he began arguing with her, held a gun to her head, threatened to kill her, and then left in a dark-colored Ford Expedition.

Williams then gave the police a handwritten statement matching her verbal account. Subsequent to obtaining the written statement, McKiernan spoke with Williams more than a dozen times, and she never changed her account of the altercation with Rondeau.

_____

(2004).

-3-

McKiernan also testified to the other 911 call that the police received about the incident. This call had been placed by Vanessa Estrada, a thirteen-year-old girl who lived in the apartment that Rondeau attempted to enter. As the assault was occurring, Estrada called to report that Rondeau was holding a gun to Williams' head. In a handwritten statement to the police, Estrada explained that Rondeau had banged on the door of her apartment but that another occupant of the apartment had refused to open the door. According to Estrada, Williams approached Rondeau to tell him that his girlfriend was not present. At that point, Rondeau pulled the gun and pointed it at Williams.

Several minutes after the assault, the police stopped a black Ford Expedition a few blocks from Chino Street. There were six people in the car, including Rondeau, who was in the rear on the passenger side. The officers found two handguns, each loaded with one round in the chamber. One was a 9 mm Luger found in the closed console in the middle of the rear seat. The other was a .25 caliber Colt found on the floor on the driver's side of the rear seat. Williams later identified the Colt the gun that Rondeau had pointed at her.

The government rested after McKiernan's testimony, the introduction of Williams' and Estrada's written statements, and the introduction of the relevant police reports. Rondeau did not present evidence but objected to the government's proof on the

ground that he did not have an opportunity to confront the witnesses against him. The government responded that it did not call Williams or the thirteen-year old Estrada in light of Williams' expressed safety concern, based in part on her knowledge that Rondeau was a "gang member." The government argued that their live testimony was unnecessary because the hearsay evidence presented was reliable. The district court agreed and admitted the evidence. It then concluded that the government had established, by a preponderance of the evidence, that Rondeau had assaulted Williams with a deadly weapon and was a felon unlawfully in possession of a firearm. The court imposed an additional twenty-four months of incarceration.

## II.

Rondeau argues that the presentation of hearsay evidence, through the testimony of Sergeant McKiernan, violated both his Sixth Amendment right to confront witnesses, as recognized in Crawford v. Washington, 541 U.S. 36 (2004), and his rights under Fed. R. Crim. P. 32.1(b)(2)(C). We begin with the constitutional question, which we consider de novo. See United States v. Cianci, 378 F.3d 71, 101 (1st Cir. 2004).

In Crawford, the Supreme Court held that, in a criminal prosecution, the Sixth Amendment forbids the introduction of an out-of-court testimonial statement unless the witness is unavailable and the defendant has previously had an opportunity to

cross-examine her.   See 541 U.S. at 68.   Even if Williams' and Estrada's statements constituted testimonial hearsay, we hold that Crawford does not apply to supervised release revocation proceedings.[2]

The Confrontation Clause provides defendants with the right to confront adverse witnesses "[i]n criminal prosecutions." U.S. Const. amend. VI.  The Supreme Court has long recognized that a parole revocation hearing, which for present purposes is analogous to a supervised release hearing, see United States v. Correa-Torres, 326 F.3d 18, 22 (1st Cir. 2003), is not equivalent to "a criminal prosecution."  Morrissey v. Brewer, 408 U.S. 471, 480 (1972).  Therefore, "the full panoply of rights due a defendant in such a proceeding does not apply to parole revocations."  Id. Rather, the proceeding "should be flexible enough to consider evidence including letter affidavits, and other material that would not be admissible in an adversary criminal trial."  Id. at 489.

Given that the Confrontation Clause focuses on "criminal prosecutions," we have not found the Clause to be applicable to post-conviction proceedings.  See United States v. Luciano, 414 F.3d 174, 179 (1st Cir. 2005) (holding that the Confrontation Clause does not apply to sentencing hearings); see also United States v. Work, 409 F.3d 484, 491 (1st Cir. 2005) ("The law is

---

[2]We reserved this issue in United States v. Taveras, 380 F.3d 532, 538 n.8 (1st Cir. 2004).

-6-

clear that once the original sentence has been imposed in a criminal case, further proceedings with respect to that sentence are not governed by Sixth Amendment protections."). Nothing in Crawford indicates that the Supreme Court intended to extend the Confrontation Clause's reach beyond the criminal prosecution context. See Luciano, 414 F.3d at 179; United States v. Aspinall, 389 F.3d 332, 342-43 (2d Cir. 2004). We therefore join several other circuits in concluding that, because a supervised release revocation hearing is not a "criminal prosecution," Crawford does not apply. See Hall, 419 F.3d 980, 985-86 (9th Cir. 2005); United States v. Kirby, 418 F.3d 621, 627-28 (6th Cir. 2005); Aspinall, 389 F.3d at 342-43; United States v. Martin, 382 F.3d 840, 844 n.4 (8th Cir. 2004).[3]

Although Rondeau does not have a Sixth Amendment right to examine adverse witnesses, he does have a limited confrontation right under Fed. R. Crim. P. 32.1(b)(2)(C). This Rule provides that a defendant subject to supervised release revocation "is entitled to an opportunity to . . . question any adverse witness unless the court determines that the interest of justice does not require the witness to appear . . . ." Fed. R. Crim P. 32.1(b)(2)(C).

The Advisory Committee Notes to Rule 32.1(b)(2)(C)

---

[3]Rondeau cites Ash v. Reilly, 354 F. Supp. 2d 1, 8-9 (D.D.C. 2004),to argue that Crawford should apply in these circumstances. For the reasons discussed above, we do not find Ash persuasive.

explain that a court should apply this Rule by balancing the releasee's right to confront witnesses with the government's good cause for denying confrontation. See Taveras, 380 F.3d at 536 (applying the relevant Advisory Committee Notes under similar circumstances). In conducting this analysis, a court should consider the reliability of the hearsay testimony and the government's reason for declining to produce the declarant. See id. at 536 ("An important element of the good cause analysis is the reliability of the evidence that the Government seeks to introduce."); Martin, 382 F.3d at 845 (stating that a court should consider "the explanation the government offers of why live testimony is undesirable or impracticable") (internal citation and quotation marks omitted). We review the district court's decision to admit hearsay evidence under Rule 32.1(b)(2)(C) for an abuse of discretion. See Taveras, 380 F.3d at 536.

The district court was within its discretion in concluding that the hearsay evidence against Rondeau was reliable. First, Williams' and Estrada's 911 calls were made as or immediately after Rondeau threatened Williams with the gun. Given the volatility of the situation, these statements qualify as excited utterances. See Fed. R. Evid. 803(2); United States v. Brito, 427 F.3d 53, 62-63 (1st Cir. 2005). Second, Williams' and Estrada's accounts of the assault were offered to the police separately, but were materially identical. See United States v.

-8-

Washington, 38 Fed. Appx. 522, 524 (10th Cir. 2002) (statements by two witnesses were considered reliable where the statements were given to the police separately but were consistent). Third, Williams and Estrada reduced their verbal statements to writing. Compare United States v. Comito, 177 F.3d 1166, 1171 (9th Cir. 1999) (concluding that "verbal allegations are . . . the least reliable type of hearsay") with United States v. Pratt, 52 F.3d 671, 677 (7th Cir. 1995) (concluding that officer's hearsay testimony was reliable because it was consistent with the written statements of the victim). Fourth, McKiernan discussed the incident with Williams over a dozen times, and she never changed her description of the assault. See Hall, 419 F.3d at 987 (statement deemed reliable, in part, because declarant provided same account several times). Finally, the police corroborated Williams' statement by locating Rondeau near Williams' building in a car that matched Williams' description and in which they also discovered the gun that Williams later identified. See United States v. Waters, 158 F.3d 933, 941 (6th Cir. 1998) (admitting hearsay statement of a co-conspirator at revocation hearing where the government had confirmed some of the details in the statement).

In challenging the district court's reliability determination, Rondeau relies on Taveras. That case does not help him. In Taveras, the government sought to introduce a hearsay statement from the victim of an alleged assault through the

testimony of the releasee's probation officer. 380 F.3d at 535. The victim made the statement to the probation officer verbally, the day after the alleged incident, but later recanted in a written statement. Id. We concluded that the district court abused its discretion in deeming the victim's verbal statement reliable for three reasons: (1) the statement was not an excited utterance because the victim made it the day after the alleged assault; (2) the victim's statement was not reduced to writing and was later recanted; and (3) the probation officer had limited contact with the victim and therefore could not reasonably assess her credibility. Id. at 537-38. None of these factors is present here.

We turn next to the adequacy of the government's reason for not presenting the declarants' live testimony. The government focused on Williams' concern about testifying, based in part on her knowledge of Rondeau's gang membership. McKiernan supported the government's approach by testifying that, in his discussions with Williams, she had expressed fear for her safety in the event she were to testify. This safety concern applied equally to Estrada, who also knew Rondeau and was only thirteen. Because the safety concern was supported by record evidence, it was within the district court's discretion to conclude that there was good reason for the declarants not to testify. See United States v. Jones, 299 F.3d 103, 113 (2d Cir. 2002) (the government provided an

-10-

adequate reason for not presenting the declarants to testify where the releasee's "history of violent conduct made reprisal against them a possibility").

The hearsay evidence presented against Rondeau was reliable, and the government presented a sufficient reason for not calling the declarants to testify. Consequently, the district court did not abuse its discretion under Rule 32.1(b)(2)(C) in admitting the hearsay evidence at Rondeau's revocation hearing.

Rondeau also claims that there was insufficient evidence to conclude that he committed an assault or illegally possessed a firearm. We consider this argument de novo, taking the facts in the light most favorable to the government, to determine whether there was proof, by a preponderance of the evidence, that Rondeau violated his supervised release conditions. See United States v. Portalla, 985 F.2d 621, 622 (1st Cir. 1993). Rondeau challenges the sufficiency of the evidence by discounting Williams' and Estrada's statements as unreliable and then claiming that the remaining evidence was insufficient. But, as discussed above, Williams' and Estrada's statements were properly considered and, when taken into account, there is no question that this evidence supports the conclusion that Rondeau assaulted Williams while illegally possessing a gun.

**Affirmed**.