# United States Court of Appeals
## For the First Circuit

No. 14-2207

UNITED STATES OF AMERICA,

Appellee,

v.

CARLOS MULERO-DÍAZ,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Aida M. Delgado-Colón, Chief U.S. District Judge]

Before

Thompson, Lipez, and Barron,
Circuit Judges.

Juan J. Hernández López de Victoria for appellant.
Rosa Emilia Rodríguez-Vélez, United States Attorney, Nelson Pérez-Sosa, Assistant United States Attorney, Chief, Appellate Division, and Thomas F. Klumper, Assistant United States Attorney, for appellee.

January 29, 2016

**BARRON**, **Circuit Judge**.   Carlos J. Mulero-Díaz appeals the District Court's revocation of his term of supervised release and imposition of a three-year term of imprisonment for violations of the conditions of that supervised release.   We affirm.

## I.

On December 3, 2009, Mulero pleaded guilty to one count of conspiracy to possess with intent to distribute narcotics in violation of 21 U.S.C. §§ 841, 846, and 860.   He was sentenced to seventy months' imprisonment and eight years' supervised release. The conditions of supervised release required Mulero to, among other things, (1) "not commit another federal, state or local crime," (2) "not possess a firearm [or] ammunition," and (3) "notify the probation officer within seventy-two hours of being arrested or questioned by a law enforcement officer."

After Mulero was released from his term of imprisonment and while he was on supervised release, the United States Probation Office requested that the District Court issue an arrest warrant and conduct a show-cause hearing as to why Mulero's supervised release should not be revoked as a result of his violations of his conditions of supervised release.   The District Court granted the Probation Office's requests.

At the show-cause hearing, Mulero conceded that he had violated the terms of his supervised release.   He admitted that he had been arrested on two occasions -- once for driving while

- 2 -

intoxicated, and a second time for driving without a driver's license and without a vehicle registration sticker. He also admitted that he had failed to report the arrests to his probation officer and that he had, in fact, driven while intoxicated and without proper license or registration.

Mulero contended that this conduct warranted a finding that he had committed a "Grade C" violation of his conditions of supervised release -- the least serious type of supervised release violation, and one that permits but does not require revocation. See U.S.S.G. §§ 7B1.1, 7B1.3. But the government argued that Mulero had also engaged in more serious offenses: domestic violence and possessing a weapon. The government argued that, due to those offenses, Mulero should be found to have committed a "Grade A" violation -- a violation that would result in mandatory revocation of his supervised release and a greater guidelines sentencing range than would a Grade C violation. See id.

To make that case, the government at the show-cause hearing introduced the testimony of Puerto Rico police officer Juan La Santa Soto, as well as the testimony of Miriam Morales Martinez, Mulero's probation officer. La Santa testified that, on a morning in April 2014, the Puerto Rico Police Department received an anonymous call concerning a domestic violence incident in Reparto Flamingo, in Bayamon, Puerto Rico. La Santa testified that upon arriving at the scene to investigate, he found two

couples arguing on the street. One of those couples, La Santa recounted, was Mulero and a woman named "Jamie." Jamie was later identified at the hearing as Jamie Figueroa.

La Santa testified that he told Mulero that he was investigating a domestic violence incident, and that Mulero told him, among other things, that he should "go to hell" and that Mulero wanted to "hit [La Santa] in the face." La Santa said that he then called his supervisor, and that when his supervisor came, Mulero challenged the supervisor to a fight. La Santa further stated that Mulero then left, at which point Figueroa told La Santa that Mulero owned a firearm, and that the firearm was in the apartment where they were both living.

La Santa recounted Figueroa's retrieving the firearm and turning it over to La Santa. According to La Santa, the firearm was a .40 caliber pistol, and it was loaded. La Santa testified that he then arrested Mulero after Mulero had returned, and found one .40 caliber bullet in Mulero's pocket.

Mulero's probation officer, Morales, testified regarding a second incident. She stated that in May 2014 she received a call reporting domestic violence between Mulero and Figueroa. Morales testified that she interviewed Figueroa, who -- according to Morales -- complained that Mulero had appeared at her house on May 21 with Wilfredo Sandoval Ayala. According to Morales, Figueroa said that Mulero had been aggressive and had broken a

window, and so Figueroa had fled her home. Morales said that Figueroa told Morales that Figueroa had gone to a neighbor for help, and that when the neighbor opened the door for her, Mulero had spilled gasoline on Figueroa. And, Morales testified, Figueroa had requested a restraining order after this incident and her request had been granted.

In addition, Morales testified that she had spoken with Figueroa's neighbor, who had corroborated Figueroa's story. According to Morales, the neighbor reported that Figueroa had asked him to let her into his house because "Mulero was being aggressive against her." Morales said the neighbor also told her that Mulero had been "bothering the neighbors" by "yelling, threatening, [firing] shots in the air, and . . . fighting [with Figueroa]."

The District Court credited the testimony of La Santa and Morales. The District Court found that there was "no doubt about the domestic violence incidents," and "no doubt" about Mulero's "possessing that weapon" and possessing ammunition. The District Court thus concluded that there was "sufficient evidence to find a [G]rade A violation."

Despite so concluding, the District Court classified Mulero's conduct as a Grade C violation. Because Mulero had a criminal history category of I, the resulting guidelines sentence was three- to nine-months' imprisonment. See U.S.S.G. § 7B1.4. But the District Court did not sentence Mulero to a term of

imprisonment within the three- to nine-months range. Instead, the District Court concluded that the "guidelines do not provide the punishment [that is] necessary for deterrence." Characterizing Mulero's violations as "blatant, clear, in clear disregard for the law . . . [and the] conditions of supervised release, constituting a threat to the life of individuals, [and] constituting a threat to the neighborhood in which you live," the District Court imposed a sentence of three years' imprisonment. See 18 U.S.C. 3583(e).

Mulero appeals.

## II.

Mulero first argues that the District Court erred in admitting hearsay evidence at the show-cause hearing "without balancing [Mulero's] right to confront witnesses with the government's cause for denying confrontation pursuant to [Federal Rule of Criminal Procedure] 32.1(b)(2)(C)." Specifically, Mulero argues that the District Court should have asked the government for some "explanation" for why Figueroa, the unnamed neighbor who observed the alleged gasoline incident, and Sandoval (the man who went to Figueroa's home with Mulero just before the gasoline incident), "were not called to testify."

Mulero is correct that a defendant who faces revocation of his term of supervised release does have a "limited confrontation right" under Federal Rule of Criminal Procedure 32.1(b)(2)(C). And, under that Rule, Mulero was entitled to "an

- 6 -

opportunity to . . . question any adverse witness unless the court determines that the interest of justice does not require the witness to appear." Fed. R. Crim. P. 32.1(b)(2)(C). We have said, moreover, that "[i]n conducting this analysis, a court should consider the reliability of the hearsay testimony and the government's reason for declining to produce the declarant." United States v. Rondeau, 430 F.3d 44, 48 (1st Cir. 2005).

The record does not reveal that the District Court expressly engaged in such a weighing. But Mulero at no point invoked Rule 32 at the show-cause hearing. As a result, the government contends that Mulero has waived any argument premised on the Rule or, at the least, forfeited it, such that we may review his challenge only under the demanding plain error standard. Mulero argues that he did generally contest the reliability of the testimony that the government offered at the show-cause hearing. He also notes that he objected that one witness testifying for the government -- Officer La Santa -- lacked personal knowledge of some of the facts to which he testified.

But when the District Court overruled the objection by Mulero on the ground that the Federal Rules of Evidence did not govern the show-cause hearing, Mulero did not then assert that he had an independent right under Rule 32 to have the court balance the reliability of the testimony against the government's interest in not having the declarant appear before admitting the hearsay

testimony.  Nor did Mulero renew his objection when La Santa testified -- at the District Court's direction -- regarding the basis of his knowledge of the facts to which Mulero had objected. And at no point in the hearing did Mulero object to Probation Officer Morales's testimony, on any basis.  For these reasons, Mulero's Rule 32 challenge is at least forfeited, and we review for plain error.  See, e.g., United States v. Shoup, 476 F.3d 38, 42 (1st Cir. 2007) (reviewing an unpreserved hearsay claim under the plain error standard).

To show plain error, Mulero "must show that (1) an error occurred; (2) the error was plain; (3) the error affected the defendant's substantial rights; and (4) the error 'seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings.'"  United States v. Ortiz-García, 665 F.3d 279, 285 (1st Cir. 2011) (alteration in original) (quoting United States v. Rivera-Maldonado, 560 F.3d 16, 19 (1st Cir. 2009)). Mulero's argument fails at the third prong, even assuming his argument does not also flunk the first two.  Under that third prong, Mulero must establish that there is "a reasonable probability that, but for [the error claimed], the result of the proceeding would have been different." United States v. Dominguez Benitez, 542 U.S. 74, 81-82 (2004) (alteration in original) (quoting United States v. Bagley, 473 U.S. 667, 682 (1985)).  But Mulero makes no developed argument to this effect.

Mulero does not explain why it is probable that the District Court, had it engaged in the balancing that Mulero contends Rule 32 requires, would have demanded the in-court testimony of Figueroa, given that she claimed to be the victim of domestic violence and given that her out-of-court statements were corroborated by her neighbor and by La Santa's observations. Cf. Rondeau, 430 F.3d at 48-49 (stating that, "[b]ecause the safety concern was supported by record evidence, it was within the district court's discretion to conclude that there was good reason for the declarants not to testify," and finding out-of-court accounts reliable where they "were offered to the police separately, but were materially identical"). Nor does Mulero explain why it is probable that the District Court, had it engaged in such a balancing analysis, would have found unreliable the out-of-court statements of the neighbor, given that those statements were corroborated, in turn, by Figueroa.[1] See id. In fact, Mulero makes no argument at all that the District Court would have reached a different conclusion in this case had it not committed the error he alleges. Mulero has thus failed to meet his burden of showing plain error.

---

[1] As for Mulero's challenge regarding Sandoval's out-of-court statements, we see no such statements in the record, and Mulero points us to none.

- 9 -

Mulero next argues that the District Court erred in revoking his term of supervised release. Mulero's briefing is hardly clear on this point, but, as far as we can tell, his only argument to this effect is that the District Court based its decision to revoke supervised release on conduct that the District Court did not, in fact, find. We review a decision to revoke supervised release for abuse of discretion, United States v. Whalen, 82 F.3d 528, 532 (1st Cir. 1996), and we conclude that there was no abuse here.

The District Court explained that it had "no doubt" that Mulero had possessed a firearm and committed domestic violence. The District Court therefore concluded that there was "sufficient evidence to find a [G]rade A violation," which would trigger mandatory revocation. The District Court did state that it was concerned that finding a Grade A violation would "just generate an appeal as to whether the legal standard of preponderance was met or not," and thus the District Court decided to classify Mulero's conduct as constituting a Grade C violation, which entitles a district court to exercise its discretion to revoke supervised release. See U.S.S.G. § 7B1.3(a)(2) ("Upon a finding of a Grade C violation, the court may (A) revoke probation or supervised release; or (B) extend the term of . . . supervised release and/or modify the conditions of supervision."). But, in classifying

Mulero's conduct as a Grade C violation, the District Court did not suggest in any respect that it was not satisfied that the conduct had occurred. And the testimony at the hearing adequately supports that finding by a preponderance of the evidence. Thus, Mulero's only argument as to why the District Court abused its discretion -- that the District Court relied on conduct it never supportably found had occurred -- fails.

## IV.

Mulero argues finally that his three-year sentence is unreasonable, both procedurally and substantively. But neither contention holds up.

Mulero first contends that the sentence is unreasonable because it is "based on hearsay evidence admitted in violation of [Rule] 32.1(b)(2)(C)." To the extent Mulero is merely restating his first argument -- that the District Court erred in admitting hearsay statements without first conducting the balancing required by Rule 32.1(b)(2)(C) -- that argument lacks merit for the reason that we have already stated. And to the extent Mulero is arguing that the District Court erred because this hearsay evidence simply could not be admitted under the standard provided by Rule 32, the argument is insufficiently developed to warrant review. See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) (holding that "issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived").

- 11 -

That leaves only Mulero's contention that his sentence is substantively unreasonable because it is "three times the applicable sentence should [the court] have declared that [Mulero] committed a Grade A violation."  In fact, the sentence is only two times higher than the high end of the guideline range, 18 months, for a Grade A violation for someone with Mulero's criminal history. See U.S.S.G. § 7B1.4.  And, in any event, the District Court found that Mulero had violated the terms of his supervised release by, among other things, committing domestic violence and possessing a weapon.  We cannot say that, in light of those findings, Mulero's three-year sentence is unreasonable, notwithstanding that it varies from the guidelines range.  See United States v. Battle, 637 F.3d 44, 51 (1st Cir. 2011) ("A sentence will stand so long as there is 'a plausible sentencing rationale and a defensible result.'" (quoting United States v. Martin, 520 F.3d 87, 96 (1st Cir. 2008))); Gall v. United States, 552 U.S. 38, 49-50 (2007) (stating that a district court may impose an upward variance after "an individualized assessment based on the facts presented" and an "adequate[] expla[nation of] the chosen sentence").

**V.**

For the foregoing reasons, the decision of the District Court is **affirmed**.

- 12 -