# United States Court of Appeals
## For the First Circuit

No. 15-1360

UNITED STATES OF AMERICA,

Appellee,

v.

RAFAEL FONTANEZ,

Defendant, Appellant.


APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Mark G. Mastroianni, U.S. District Judge]


Before

Lynch, Selya and Lipez,
Circuit Judges.

Robert Herrick and Nicholson Herrick LLP on brief for appellant.
Carmen M. Ortiz, United States Attorney, and Kelly Begg Lawrence, Assistant United States Attorney, on brief for appellee.

January 9, 2017

**SELYA**, **Circuit Judge**.    Defendant-appellant Rafael Fontanez challenges evidentiary rulings made in the course of the revocation of his supervised release and the ensuing revocation sentence.    After careful consideration, we reject his asseverational array and affirm the judgment below.

## I.  BACKGROUND

We start with an overview of the relevant facts and the travel of the case.  On October 15, 1998, the appellant was charged with one count of conspiracy to possess with intent to distribute cocaine base (crack cocaine) and three specific-offense counts of distribution of that controlled substance.  See 21 U.S.C. §§ 841(a)(1), 846.  The indictment alleged the applicability of 21 U.S.C. § 841(b)(1)(A)(iii), which provides for a sentence up to life imprisonment.[1]

The appellant maintained his innocence and went to trial.  The jury found him guilty on all counts.  The appellant had stipulated to the quantity of drugs for which he should be held accountable — a series of transactions involving specified amounts, totaling more than one kilogram — and the jury was not asked to make (and did not make) a separate drug-quantity determination.

---

[1] At the time, section 841(b)(1)(A)(iii) applied to offenses involving more than fifty grams of cocaine base.  The triggering amount has since been increased to 280 grams.  See Fair Sentencing Act of 2010, Pub. L. No. 111-220, § 2(a)(1), 124 Stat. 2372, 2372.

At the disposition hearing, the sentencing court noted that the jury "had to have found [the appellant] guilty of more than 50 grams." This drug quantity exposed the appellant to a maximum penalty of life imprisonment instead of the default maximum penalty of twenty years in prison. Compare 21 U.S.C. § 841(b)(1)(A)(iii) with id. § 841(b)(1)(C). The court proceeded to sentence the appellant to an eighteen-year term of immurement, to be followed by a five-year term of supervised release.[2]

The appellant served his incarcerative term and, on June 11, 2014, began serving his supervised release term. On November 29, 2014, a man was stabbed at a bar in Springfield, Massachusetts. An anonymous telephone call named the appellant as the perpetrator. Three days later, a Springfield police officer, Eric Podgurski, interviewed the victim in the hospital. He showed the victim an eight-person photo array, which included a picture of the appellant. The victim identified the appellant as the malefactor

---

[2] The appellant insists that this judgment does not "establish[] a conviction for a violation of 21 U.S.C. § 841(b)(1)(A)(iii)" because the written judgment states only that the appellant was found guilty of violating 21 U.S.C. §§ 841(a)(1) and 846. By its terms, though, that written judgment "adopts the factual findings and guideline application in the presentence report" — a report that stated unambiguously that "21 U.S.C. § 841(b)(1)(A)(iii) applies" to the appellant's sentence. In all events, the court made it luminously clear at the sentencing hearing that the sentence was premised on section 841(b)(1)(A)(iii). If there were a material conflict between the written judgment and the oral sentence (and we see none), the latter would control. See United States v. Riccio, 567 F.3d 39, 40 (1st Cir. 2009).

and wrote on his picture: "I am 100 percent this is the guy that stabbed me."

In due course, the appellant was charged in a Massachusetts state court with attempted murder and assault with a dangerous weapon. He was later brought before the federal district court in a revocation proceeding aimed at determining whether he had violated the conditions of his supervised release (which included a condition forbidding him from committing "another federal, state, or local crime" during the currency of his supervised release).

The revocation hearing was continued at the appellant's request. When the rescheduled date arrived, the government explained that the victim was out of state due to a pre-planned vacation. In lieu of the victim's testimony, it sought to introduce, through Podgurski, hearsay evidence anent both the photo array identification and the anonymous telephone call. The district court allowed this evidence over the appellant's objection. The government also introduced other evidence, including the bar's video surveillance footage capturing the commission of the crime.

The district court found, by a preponderance of the evidence, that the appellant had committed the stabbing and, thus, had violated the conditions of his supervised release. The court based this determination primarily on the surveillance video, the

victim's identification of the appellant in the photo array, and evidence of the victim's wounds. The court then determined that the offense undergirding the appellant's supervised release term was an offense that fell within the purview of 21 U.S.C. § 841(b)(1)(A)(iii) and, accordingly, was a Class A felony. See 18 U.S.C. § 3559(a)(1). Having made this determination, the court sentenced the appellant to a four-year incarcerative term for violating the conditions of his supervised release. This timely appeal followed.

## II. ANALYSIS

The appellant challenges both the finding that he violated the conditions of his supervised release and the sentence imposed. We discuss these challenges sequentially.

### A. **The Supervised Release Violation.**

The appellant's merits challenge is premised on his view that the court improperly allowed the admission of hearsay evidence. He submits that the district court should not have permitted Podgurski to testify either to the victim's identification of the appellant in the photo array or to the anonymous telephone call. Inasmuch as these objections were preserved below, we review the court's decision to admit the challenged evidence for abuse of discretion. See United States v. Rondeau, 430 F.3d 44, 48 (1st Cir. 2005).

In revocation proceedings, a releasee does not have a Sixth Amendment right to confront adverse witnesses. See id. He has only a more circumscribed right, delineated in the Federal Rules of Criminal Procedure. Hearsay evidence is allowable but, under Rule 32.1(b)(2)(C), a releasee is entitled to "question any adverse witness unless the court determines that the interest of justice does not require the witness to appear." In making such a determination, the court must balance the releasee's right to confront the witnesses against him with what good cause may exist for denying confrontation in a particular instance. See Rondeau, 430 F.3d at 48. In practice, this need for balancing requires the court to weigh both the apparent reliability of the hearsay evidence and the government's proffered reason for not producing the declarant. See id.

Here, the district court concluded that the interests of justice did not require the victim's live testimony. In assailing this conclusion, the appellant trains his fire principally on the district court's decision to admit Podgurski's testimony regarding the photo array. He argues that, as a practical matter, the court failed to carry out the balancing test at all because it admitted the testimony despite finding that the government's reason for not producing the victim was "very weak." He further argues that the district court's crediting of that "very weak" reason and its

admission of the hearsay evidence was an abuse of discretion.  We do not agree.

To begin, Podgurski's photo array testimony was characterized by several indicia of reliability.  As an initial matter, the government introduced a surveillance video of the stabbing, which corroborated the victim's account of the incident (as related to Podgurski).  So, too, it confirmed the victim's identification of the appellant.  Objective evidence that corroborates a witness's testimony may provide persuasive proof of that testimony's reliability.  See id.

Here, moreover, the officer's interaction with the victim bolstered the testimony's reliability.  Cf. United States v. Taveras, 380 F.3d 532, 538 (1st Cir. 2004) (finding hearsay testimony unreliable where probation officer had only spoken to victim briefly).  Podgurski met with the victim face-to-face in the hospital and interviewed him at length.  The victim was cooperative, and his account of the stabbing was both internally consistent and consistent with the video.  The consistency of a declarant's account of events may lend support to a finding of reliability.  See United States v. Marino, 833 F.3d 1, 6 (1st Cir. 2016); Rondeau, 430 F.3d at 48.  And according to the district court (which had the advantage of observing Podgurski's demeanor at first hand), Podgurski "testified in a way that [indicated] that he was getting reliable information from the victim."

Relatedly, the victim identified the appellant confidently. He expressed no doubt, and memorialized the identification in writing on the photograph that he selected (a photograph that was, in fact, a photograph of the appellant). The victim's confidence in his account was a factor to which the court could give weight in gauging the reliability of that account. See United States v. DeCologero, 530 F.3d 36, 62 (1st Cir. 2008).

Last — but far from least — the manner in which Podgurski handled the photo array bolstered the finding of reliability. The array was presented to the victim while the central events were fresh in his mind (his identification was made a scant three days after the stabbing). Furthermore, Podgurski took care in composing and presenting the photo array: before showing it to the victim, he read aloud a comprehensive explanation of the photo array process. Among other things, this explanation warned the victim that the perpetrator might or might not be included in the array. Importantly, the photographs used in the array were of men whose looks were generally similar to the appellant's. And, all of the photographs had the same background (thus mitigating the risk of drawing attention to a particular photograph).

The short of it is that the photo array testimony bore the hallmarks of reliability. The close proximity between the crime and the identification, the time that Podgurski spent with the victim, the victim's level of certainty, and the lack of any

suggestiveness in the photo array all support the identification's reliability, see id., and thus support a finding that the Podgurski testimony should be regarded as reliable. The fact that the victim memorialized the identification in writing (on the back of a correctly selected photograph of the appellant) also signals the testimony's trustworthiness. See Rondeau, 430 F.3d at 48 (finding hearsay testimony reliable where declarants "reduced their verbal statements to writing").

In the Rule 32.1(b)(2)(C) context, strong evidence of reliability can counterbalance a weak reason for not producing the declarant. See, e.g., Marino, 833 F.3d at 6-7; United States v. Boyd, 792 F.3d 916, 920 (8th Cir. 2015). Given this principle, we think that the government in this case furnished "a sufficient reason" for not producing the victim. Rondeau, 430 F.3d at 49. The revocation hearing was not held when originally scheduled and, on the continued date, it is undisputed that the victim was out of state for a legitimate reason (totally unrelated to the case). The district court found that to be an adequate reason for not producing him as a witness. On the facts of this case, that finding was plausible.

In an effort to blunt the force of this reasoning, the appellant suggests that the government never intended to call the victim as a witness. Therefore, he says, the court's assumption

that only "a scheduling issue" prevented the government from calling the victim was clearly erroneous.[3]

This is magical thinking. The record reflects that the government had planned to have the victim in attendance; but after the hearing was continued at the appellant's request, the victim left on vacation. On the new hearing date, the prosecutor expressly stated that he had been expecting the victim to be present.

To be sure, the prosecutor did tell the court that he "was going to attempt to try the case without putting [the victim] on the stand and further victimize the victim who has to testify in state court. He already testified in the grand jury and has to testify at trial there." But these remarks indicate, at most, a vague, noncommittal desire to avoid putting the victim on the stand, not a decision to refrain from doing so.[4]

We add, moreover, that although the government's reason for not producing the victim may have been weak, the appellant

---

[3] In this regard, the court stated: "I think the government offered evidence [that] it really was just a scheduling issue. It was a vacation-type issue and trying to serve a subpoena on this particular witness" would have been futile.

[4] We add that, in appropriate circumstances, the desire not to further victimize the victim may provide an additional reason for not requiring a victim to testify. Cf. Rondeau, 430 F.3d at 49 (permitting hearsay testimony rather than forcing declarants to testify in front of releasee who caused them to fear for their safety). We have no occasion to explore this point today.

contributed to the victim's absence.  After all, it was the appellant who requested and received the original continuance, thus creating the conflict between the new hearing date and the victim's planned vacation.  In striking the requisite balance, the district court was entitled to take into account the fact that the appellant contributed to the government's inability to produce the witness.  See United States v. Williams, 443 F.3d 35, 45 (2d Cir. 2006) (holding that releasee's "interest in confronting the declarant is entitled to little, if any, weight" when releasee's actions caused declarant's absence).

By the same token, the appellant — after being advised of the victim's unavailability — neither suggested nor expressed a willingness to agree to a further continuance.  This fact, too, was pertinent to the striking of the balance.  See generally United States v. Sepulveda, 15 F.3d 1161, 1178 (1st Cir. 1993) (discussing general rule that "a defendant who does not request a continuance will not be heard to complain on appeal that he suffered prejudice as a result").

In constructing the balance between the reliability of proffered hearsay evidence and the need for confrontation, the district court's discretion is broad.  See Marino, 833 F.3d at 5-7; Rondeau, 430 F.3d at 48-49.  In this instance, the district court did not abuse its broad discretion in admitting the photo array testimony.

We need not tarry over the anonymous telephone call. The district court took pains to note that it gave Podgurski's testimony about the anonymous call only the weight that it "might deserve," which the court described as "not considerable but some weight." Given the substantial other evidence of the appellant's involvement in the stabbing (including Podgurski's photo array testimony) and the infinitesimal role that the call played in the court's analysis, any error in admitting Podgurski's testimony about the anonymous call was manifestly harmless. See United States v. Mosley, 759 F.3d 664, 669 (7th Cir. 2014) (holding that erroneous admission of hearsay evidence in revocation proceeding was harmless error when "the result would have been the same without admitting the hearsay").

## B.  The Sentence.

The maximum sentence for a person who violates the conditions of his supervised release varies based on the severity of "the offense that resulted in the term of supervised release." 18 U.S.C. § 3583(e)(3).  For that purpose, offenses are grouped in various categories.  Those groupings have real-world consequences: a Class C or D felony bears a maximum sentence upon revocation of supervised release of two years; a Class B felony bears a maximum sentence upon revocation of supervised release of three years; a Class A felony bears a maximum sentence upon revocation of supervised release of five years; and all other offenses bear a

maximum sentence upon revocation of supervised release of one year. See id. These categories correspond to the maximum penalties that can be imposed for the underlying offenses: a Class D felony is an offense that carries a term of imprisonment of at least five but less than ten years; a Class C felony is an offense that carries a term of imprisonment of at least ten but less than twenty-five years; a Class B felony is an offense that carries a term of imprisonment of at least twenty-five years but less than life imprisonment; and a Class A felony is an offense that carries a maximum penalty of either death or life imprisonment. See id. § 3559(a).

The appellant argues that the district court lacked the authority to sentence him to more than two years of imprisonment for violating his supervised release. In support, he argues that the court misclassified his underlying offense as a Class A felony when it should have been considered a Class C felony. The appellant preserved this argument at the revocation hearing, and we review his classification challenge de novo. See United States v. Eirby, 515 F.3d 31, 35 (1st Cir. 2008).

The basic facts are clear. The jury convicted the appellant of violating sections 841(a)(1) and 846. Neither of these offenses requires a specific drug quantity in order to convict, and the jury made no explicit drug-quantity determination. Without such a determination, the "default"

- 13 -

statutory maximum of twenty years ordinarily would apply.  See 21 U.S.C. § 841(b)(1)(C); United States v. Portes, 505 F.3d 21, 25 (1st Cir. 2007).

Here, however, the sentencing court found the appellant responsible for over a kilogram of cocaine base and sentenced him under 21 U.S.C. § 841(b)(1)(A)(iii).  At the time, that statute required a drug quantity of more than fifty grams of cocaine base and carried a maximum sentence of up to life imprisonment.  The appellant, in effect, is seeking to challenge, albeit quite belatedly, the sentencing court's resort to section 841(b)(1)(A)(iii).

In Apprendi v. New Jersey, the Supreme Court held that "any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."  530 U.S. 466, 490 (2000).  The appellant argues that the district court's classification of his earlier conviction as a Class A felony rested upon a fact not found by the jury (drug quantity) and, thus, offended Apprendi.

The government counters that the appellant cannot collaterally attack his sentence in this proceeding.  It adds that, in any event, the indictment in the original case charged a drug quantity sufficient for a Class A felony, the appellant stipulated to such a quantity, and the district court appropriately sentenced him based on that quantity.

- 14 -

It is entirely likely that the appellant's challenge to his sentence is not properly before us. See Eirby, 515 F.3d at 36 (describing appellant's Apprendi claim in similar circumstances as an impermissible "collateral attack"); see also Trenkler v. United States, 536 F.3d 85, 96 (1st Cir. 2008) (describing 28 U.S.C. § 2255 as the "exclusive means of challenging the validity of [a federal prisoner's] conviction or sentence," with limited exceptions). But because his challenge fails on the merits regardless, we bypass the "collateral attack" issue.

To be blunt, the appellant's argument collides head-on with binding precedent. At trial, the appellant stipulated to a drug quantity that was well in excess of the threshold needed for a Class A felony. At sentencing for the underlying offense, the sentencing court's drug-quantity determination was based on the stipulation. We have stated in no uncertain terms that "[f]actfinding premised on a defendant's admissions is not a practice invalidated by Apprendi." Eirby, 515 F.3d at 36. In this case, the stipulation obviated the need for a jury determination of drug quantity because the appellant "had agreed to the drug quantities, thereby leaving nothing for the jury to do on that issue." United States v. Etienne, 772 F.3d 907, 923 n.9 (1st Cir. 2014). And in the absence of any Apprendi error at the original sentencing, the court below cannot plausibly be said to have committed an Apprendi error at the revocation hearing by

treating the appellant's prior conviction as a Class A felony. See id. at 923; Eirby, 515 F.3d at 36.

It is true, as the appellant suggests, that the Eirby defendant — unlike the appellant — had entered a guilty plea. See 515 F.3d at 32. For present purposes, though, this is a distinction without a difference: what matters is that here, as in Eirby, the sentencing court's drug-quantity determination was based on the defendant's stipulation.

It is also true, as the appellant suggests, that the stipulation in Etienne was relevant to an element of the offense, see 772 F.3d at 923, and not — as here — merely to a sentencing factor, see United States v. Delgado-Marrero, 744 F.3d 167, 185 (1st Cir. 2014) ("Prior to [Apprendi], . . . 'drug quantity' was considered . . . a 'sentencing factor' that the sentencing judge could determine by a preponderance of the evidence."). Once again, the distinction that the appellant draws has no significance: in both Etienne and this case, the defendant stipulated to a fact, not a fact only to be used for a certain purpose. See United States v. Teeter, 257 F.3d 14, 28 (1st Cir. 2001) ("Should the court decide to accept and act upon factual stipulations for sentencing purposes, the parties usually will be firmly bound.").

That ends this aspect of the matter. The appellant's original supervised release term was imposed as part of his sentence for a crime to which the penalty provisions of 21 U.S.C.

§ 841(b)(1)(A)(iii) applied (by virtue of his drug-quantity stipulation). See Etienne, 772 F.3d at 923; Eirby, 515 F.3d at 36; cf. United States v. McIvery, 806 F.3d 645, 651 (1st Cir. 2015) (holding that any error in imposition of mandatory minimum sentence based on drug quantity neither charged in indictment nor proven to a jury was harmless because evidence of quantity was "uncontested"). Consequently, that underlying offense was a Class A felony, see 18 U.S.C. § 3559(a)(1), and the court below was authorized to sentence him to a term of imprisonment of up to five years for violating his supervised release conditions, see id. § 3583(e)(3). It follows inexorably that the appellant's claim of sentencing error is baseless.

## III. CONCLUSION

We need go no further. For the reasons elucidated above, the judgment is

**Affirmed.**