PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 24-2274
_____

UNITED STATES OF AMERICA

v.

CARL ROSE,
                            Appellant
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
District Court No. 2:09-cr-00084-001
District Judge:  Honorable Gerald A. McHugh
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
July 1, 2025

Before: SHWARTZ, FREEMAN, and SMITH, *Circuit
Judges*

(Filed: August 20, 2025)

Vernon Z. Chestnut, Jr.
Suite 207
150 Monument Road
Bala Cynwyd, PA 19004
    *Counsel for Appellant*

Kevin L. Jayne
Robert A. Zauzmer
Office of United States Attorney
615 Chestnut Street
Suite 1250
Philadelphia, PA 19106
    *Counsel for Appellee*

_____

OPINION
_____

SMITH, *Circuit Judge.*

Carl Rose began his term of supervised release following the completion of his sentence of incarceration for federal drug and firearm offenses. The District Court revoked Rose's supervised release and sentenced him to further incarceration based on its conclusion that Rose committed aggravated assault while on supervision. In making that determination, Rose argues, the District Court improperly relied upon hearsay evidence, thereby violating his right to confront adverse witnesses. Because the hearsay evidence was sufficiently reliable and the Government established good cause for the declarant's absence, we will affirm.

2

# I

In 2011, a jury sitting in the Eastern District of Pennsylvania convicted Carl Rose of federal drug and firearm offenses. The District Court sentenced Rose to 120 months' imprisonment, followed by a five-year term of supervised release. But about two years after Rose's term of supervision began in 2019, the District Court determined that Rose violated the terms of his supervision. That led the Court to sentence Rose to an additional 12 months' imprisonment, with a three-year term of supervised release to commence thereafter. Rose began that term of supervision in October 2021.

Again, trouble soon followed. The Probation Office filed a report in February 2022 alleging that Rose violated the terms of his supervision by submitting a urine specimen that tested positive for marijuana, and then, by absconding from supervision. The District Court ordered the issuance of a warrant for Rose's arrest so that he could be brought before the Court for a revocation hearing. But before that hearing could occur, the Probation Office filed an amended report.

The amended report provided that Rose was arrested in Philadelphia and charged with, *inter alia*, aggravated assault and prohibited possession of a firearm. According to the report, the victim of the attack told officers that Rose entered her bedroom, brandished a firearm and told her she owed him money. The report further alleged he stabbed her multiple times before fleeing.

The state charges relating to Rose's April arrest proceeded in the Philadelphia Court of Common Pleas. But when the victim of the alleged stabbing failed to appear, the Commonwealth dismissed the aggravated assault charge. Rose

pled guilty to prohibited possession of a firearm in February 2024.

Rose appeared before the District Court for his supervised release revocation hearing on May 22, 2024. He did not dispute the violation related to his possession of a firearm, so the hearing focused on the alleged aggravated assault.

The Government began by offering Timothy Flanagan, an agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives, as its first witness. Agent Flanagan testified that despite the issuance of a subpoena for the victim and his repeated attempts to locate her, he was unsuccessful. He also testified that the victim was a fugitive wanted on unrelated charges lodged in Pennsylvania state court. Defense counsel objected, arguing that the Government failed to establish good cause for the victim's nonappearance, and that admitting any of the victim's out-of-court statements would violate Rose's constitutional right to confront the witnesses against him. The District Court stated that it was satisfied the Government had acted in good faith in trying to locate the victim, but it reserved ruling on the confrontation issue, citing a need to hear more evidence.

The Government then offered Philadelphia Police Officer Domenic Etri, who testified that he responded to the reported stabbing. The Government moved to introduce the body camera footage of an officer who accompanied Officer Etri to the scene of the attack that day.

The video showed—and Officer Etri confirmed—that the victim identified Rose as her attacker. The victim also told officers that Rose frequents the "municipal building" in downtown Philadelphia, App. 58, and described him as light-

4

skinned, heavy set, and wearing a black jacket, Officer Etri further testified that he accompanied the victim to a nearby hospital. He explained that officers brought Rose to the hospital after apprehending him. The Government introduced Officer Etri's body camera footage, which showed that the victim, while at the hospital, recognized Rose as her assailant and told officers that Rose brandished a small black gun during the attack.

Next, the Government called Philadelphia Police Officer Michael Mullin to the stand. He testified that on the day of the alleged assault, he received a radio call that an aggravated assault had just occurred and that the suspect, Rose, frequents the municipal building. So Officer Mullin and his partner proceeded on foot. Officer Mullin testified that when they arrived at the plaza of the municipal building, they found a man matching the description provided in the radio call. They identified him as Rose. When Officer Mullin and his partner searched Rose, they found a firearm and a bloody knife. Officer Mullin could not confirm, however, whether law enforcement ever tested the blood on the knife to see if it matched the victim's.

Having taken the matter under advisement, and after receiving the supplemental briefing it had ordered, the District Court concluded that consideration of the victim's out-of-court statements would not violate Rose's confrontation rights. The Court reasoned that the victim's statements were sufficiently reliable, and the Government had shown good cause for her being absent from the revocation hearing.

On that basis, the District Court concluded that there was "ample evidence" that Rose committed aggravated assault.

5

App. 132. The Court revoked Rose's supervised release and sentenced him to a 48-month term of imprisonment.

Rose timely appealed.

## II[1]

Rose argues that the District Court's admission of the victim's out-of-court statements violated his constitutional right to confrontation and Federal Rule of Criminal Procedure 32.1(b)(2)(C). We are not persuaded.

## A

Neither the Confrontation Clause of the Sixth Amendment nor the Federal Rules of Evidence apply in supervised release revocation hearings. *See United States v. Lloyd*, 566 F.3d 341, 343 (3d Cir. 2009) (citing *Morrissey v. Brewer*, 408 U.S. 471, 488–89 (1972); *Gagnon v. Scarpelli*, 411 U.S. 778, 782 (1973); Fed. R. Evid. 1101(d)(3)). But hearsay evidence is not *per se* admissible at such hearings, *id.* at 343–44; supervised releasees maintain "the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation)." *Morrissey*, 408 U.S. at 489.

"This limited right to confrontation stems from the Fifth Amendment's Due Process Clause[.]" *Lloyd*, 566 F.3d at 343. And it is codified in Federal Rule of Criminal Procedure 32.1. *See* Fed. R. Crim. P. 32.1(b)(2)(C) (providing releasees with "an opportunity to . . . question any adverse witness unless the

---

[1] The District Court had jurisdiction under 18 U.S.C. §§ 3231 and 3583(e). We have jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

court determines that the interest of justice does not require the witness to appear").

In *Lloyd*, our Court adopted a test to determine whether hearsay evidence may be properly admitted in revocation hearings. 566 F.3d at 344–45. The test requires courts to "'balance the [releasee's] interest in the constitutionally guaranteed right to confrontation against the government's good cause for denying it.'" *Id.* at 345 (quoting Fed. R. Crim. P. 32.1(b)(2)(C) advisory committee's note to the 2002 amendment).

With respect to the releasee's interest in confrontation, which "is an independent factor that should be analyzed separately from cause[,]" we have instructed courts to principally consider whether the proffered hearsay is sufficiently reliable. *Id.* "In some cases, the releasee's interest in confrontation may be overwhelmed by the hearsay's reliability such that the Government need not show cause for a declarant's absence." *Id.* (rejecting a "*per se* rule that a district court's failure to explicitly address cause amounts to reversible error in all cases"). But ordinarily, even where the out-of-court statements bear "some indicia of reliability," the Government must establish good cause for the declarant's nonappearance to outweigh the releasee's interest in confrontation. *Id.*

B

We review the admissibility of hearsay evidence under Rule 32.1(b)(2)(C), *i.e.*, a district court's balancing of the *Lloyd* factors, for abuse of discretion. *Lloyd*, 566 F.3d at 344

7

(citing *United States v. Williams*, 443 F.3d 35, 46 (2d Cir. 2006), *abrogated on other grounds*, *Esteras v. United States*, 145 S. Ct. 2031, 2038 n.1 (2005)). "Abuse of discretion encompasses clearly erroneous findings of fact and misapplications of the law." *Williams*, 443 F.3d at 46. A district court's independent assessment of the hearsay's reliability ordinarily involves factual determinations, which we review for clear error. *See United States v. McGlory*, 968 F.2d 309, 347 (3d Cir. 1992).

We begin by addressing Rose's interest in confrontation, as informed by the reliability of the victim's out-of-court statements. In *Lloyd*, we explained that "[h]earsay given under oath, replete with detail, or supported by corroborating evidence, has been recognized as reliable." 566 F.3d at 345 (internal citations omitted). Whereas "out-of-court statements reflecting an adversarial relationship with the accused, or containing multiple layers of hearsay, have been recognized as unreliable." *Id.* (internal citations omitted).

Here, we conclude that the District Court correctly ruled that the victim's out-of-court statements bore sufficient indicia of reliability to justify the Court's consideration of them in revoking Rose's supervised release.[2]

---

[2] The Government argues that the District Court correctly "held that the victim's out-of-court statements implicated no confrontation interest" under *Michigan v. Bryant*, 562 U.S. 344, 362, 368–69 (2011) (holding that statements made to law enforcement in order to address an ongoing emergency were not testimonial and therefore did not implicate the defendant's Sixth Amendment right to confrontation). Response Br. at 29.

We recognize, as Rose argues, that the victim's statements were not made under oath. But while "unsworn and oral statements to the police are the least reliable type of hearsay," they "may nevertheless be reliable if corroborated by

That argument suffers from two flaws. First, it is at odds with the record. Although the District Court determined that certain statements were not testimonial under *Bryant*, it explicitly rejected the Government's contention "that there's no due process confrontation issue here." App. 125. And it proceeded to consider whether the victim's out-of-court statements bore sufficient indicia of reliability under *Lloyd*. Second, the Government likely waived this argument when it argued before the District Court that "*Bryant* has little (if any) relevance to the issues" presented by Rose's revocation hearing because *Bryant* relates to the Sixth Amendment's Confrontation Clause, not the Fifth Amendment confrontation right releasees enjoy at revocation hearings. Dist. Ct. Dkt. No. 186 at 8 n.2. Our Court has yet to consider whether nontestimonial hearsay must satisfy *Lloyd*'s balancing test to be admitted at a revocation hearing. Persuasive authority suggests that it does. *See Valdivia v. Schwarzenegger*, 599 F.3d 984, 990–91 (9th Cir. 2010). But some jurists have criticized that rule. *See Valdivia v. Schwarzenegger*, 623 F.3d 849, 850–51 (9th Cir. 2010) (Bea, J., dissenting from denial of *en banc* rehearing); *United States v. Alvear*, 959 F.3d 185, 194 (5th Cir. 2020) (Oldham, J., concurring). We need not take sides in that debate to decide this appeal. The District Court did not treat its nontestimonial finding as dispositive, and, as we explain above the line, the Court did not abuse its discretion by admitting the out-of-court statements under the balancing test we endorsed in *Lloyd*.

9

other" objective evidence. *United States v. Timmons*, 950 F.3d 1047, 1051 (8th Cir. 2020) (internal quotation marks and citation omitted); *see also United States v. Fontanez*, 845 F.3d 439, 443 (1st Cir. 2017) ("Objective evidence that corroborates a [declarant's] testimony may provide persuasive proof of that testimony's reliability."). Such is the case here, as the District Court aptly determined.

We start with the victim's statement that she was stabbed. That contention was directly corroborated by Officer Etri's testimony that he discovered the victim with multiple stab wounds, along with the body camera footage and image of her wounds the Government introduced at the hearing. *See United States v. Peguero*, 34 F.4th 143, 156 (2d Cir. 2022) (citing a declarant's "physical injuries" as an indicium of reliability bolstering the declarant's account of an attack); *see also United States v. Martin*, 382 F.3d 840, 846 (8th Cir. 2004) (same). As for the victim's identification of Rose as her attacker, her description of Rose's clothing and her statement that he frequented the Philadelphia municipal building, were confirmed by Officer Mullin's testimony that he and his partner found Rose matching the victim's description at the municipal building shortly after the attack. *See United States v. Rondeau*, 430 F.3d 44, 48 (1st Cir. 2005) (concluding that out-of-court statements were reliable where, *inter alia*, "police corroborated" the statements by finding the assailant "in a car that matched [the declarant's] description").

Most importantly, the victim's statement that Rose stabbed her after brandishing a firearm, was substantiated by Officer Mullin's testimony that officers found a bloody knife

and a gun on Rose's person when he was apprehended.[3] *See id.* (relying upon the fact that officers located a gun the declarant stated was used in the attack to bolster the statement's reliability).

Additionally, the District Court appropriately observed a further indicium of reliability. The victim's initial statements to officers—identifying Rose as her attacker, describing his appearance and clothing, and providing his likely location— were all made while the victim was bleeding from multiple stab wounds following the attack. Officer Etri testified that when he encountered the victim, she was "crying, screaming[,]" and "appeared to be in a lot of pain." App. 83. That the victim made the out-of-court statements while distressed from a recent violent attack adds another indicium of reliability. *See Martin*, 382 F.3d at 846 (concluding that the declarant's "state of mind

---

[3] We reject Rose's assertion that the Government's failure to forensically test the blood on the knife to see if it matched that of the victim renders the victim's out-of-court statements unreliable and uncorroborated. True, at the revocation hearing, Officer Mullin could not confirm whether the blood on the knife was tested against the victim's. Nevertheless, the District Court credited Officer Mullin's testimony that there was blood on the knife when he removed it from Rose's person. We review that credibility determination for clear error, *United States v. Daye*, 4 F.4th 698, 700 (8th Cir. 2021), and we perceive no error here given the weight of the corroborating evidence discussed in text. And in light of that evidence, the District Court could infer that the blood on the knife was the victim's.

adds an indici[um] of reliability" where she was "excited and distressed" at the time the statements were made).

Rose does not meaningfully contest the corroborating evidence or the victim's state of mind when giving her initial statements to officers. Instead, he argues—without any elaboration—that the victim's statements were unreliable because "she had an adversarial relationship" with Rose, Reply Br. at 10, and "was a fugitive from justice" when she spoke to police, Opening Br. at 15. Given the indicia of reliability described above, both arguments fail.

Presumably, the basis for Rose's adversarial-relationship assertion is the victim's statement that Rose told her she owed him money before the attack. But that is not the sort of "adversarial relationship" courts have recognized as rendering a declarant's out-of-court statements less reliable. *See, e.g.*, *United States v. Comito*, 177 F.3d 1166, 1171 (9th Cir. 1999) (explaining that statements made by the releasee's ex-girlfriend "shortly after their romantic relationship ended" were unreliable); *United States v. Huckins*, 53 F.3d 276, 279 (9th Cir. 1995) (same for statements made against a defendant by an accomplice in the course of plea negotiations with the government). Even assuming that money caused bad blood between the victim and Rose, that does not outweigh the indicia that the victim reliably implicated Rose as her attacker.

Nor does the victim's fugitive status tip the scale in favor of unreliability. Were the victim's statements wholly uncorroborated, this could be a different case. *See United States v. Lee*, 68 F.3d 1267, 1275–76 & n.10 (11th Cir. 1995) (concluding that an otherwise uncorroborated hearsay statement made by a fugitive from justice was unreliable). But here, any indicium of unreliability stemming from the victim's

12

status as a fugitive from justice is outweighed by the quantum of corroborating evidence presented at the revocation hearing.

Putting it all together, the District Court appropriately found that the victim's out-of-court statements were reliable. The statements' reliability, in turn, weakened Rose's interest in confronting the victim. *See United States v. Mosley*, 759 F.3d 664, 668 (7th Cir. 2014).

C

We turn next to the Government's justification for the victim's absence at the revocation hearing, and whether it constituted good cause sufficient to outweigh Rose's weakened interest in confrontation. We agree with the District Court that it did.

In Rose's view, the Government "failed to offer any reason" for the victim's absence. Opening Br. at 20. Not so. "Courts have recognized that a declarant's refusal to testify or threats made against a declarant may be good cause for his absence[.]" *Lloyd*, 566 F.3d at 346 (citing *Williams*, 443 F.3d at 46–47; *Comito*, 177 F.3d at 1172). But those are not the sole grounds upon which courts may find good cause. In an appropriate case, the Government's inability to locate the declarant, despite its reasonable diligence and good-faith efforts, may also suffice. *See, e.g.*, *United States v. Martin*, 371 F.3d 446, 448–49 (8th Cir. 2004). This is just such a case.

As shown through Agent Flanagan's testimony, the Government made several attempts to locate the victim. A month before the revocation hearing, and after obtaining a subpoena, Agent Flanagan visited three addresses associated with the victim. The first address was listed in a law-

13

enforcement database as the residence where the victim received unemployment checks. But when Agent Flanagan arrived, he found "mail piled up at the doorstep[,]" none of which was in the victim's name. App. 33. He asked an employee with the leasing office if she was familiar with the victim; she was not. Agent Flanagan then went to the residence where the victim was stabbed. But the property's windows and doors were boarded, and there was no indication that anyone was living there. Agent Flanagan traveled to a third address that he located through an open-source database. There, he again found mail addressed to a person other than the victim, and his door-knock received no answer.

Agent Flanagan's database searches also returned a phone number for the victim. He called "[n]umerous times" and left voicemails on the answering machine identifying himself—all to no avail. App. 35. And he testified that he was unable to conceive of any further steps he could have taken to locate the victim and secure her live testimony at Rose's hearing.

On these facts, and especially given the reliability of the hearsay evidence, the District Court did not abuse its discretion in concluding that the Government's diligent, though unsuccessful, efforts to locate the victim established good cause for her absence that outweighed Rose's interest in confrontation.[4] *See Curtis v. Chester*, 626 F.3d 540, 548 (10th

---

[4] We do not mean to suggest that *any* failed attempt to locate a declarant, even if undertaken in good faith, will suffice to establish good cause. *See, e.g.*, *United States v. Sutton*, 916 F.3d 1134, 1139–40 (8th Cir. 2019) (concluding that the government failed to show good cause where it, *inter alia*,

14

Cir. 2010) (explaining that "the government's good cause in denying confrontation [was] substantial" where the "victim could not be located[,]" despite the issuance of a subpoena and the government's diligent investigative efforts); *Martin*, 371 F.3d at 449 (concluding that the government's explanation that the declarant "could not be found" was "reasonably satisfactory" to establish good cause, especially given the reliability of the declarant's statements).

III

In sum, the District Court conducted the careful analysis required by *Lloyd*. It thoughtfully addressed the reliability of the victim's out-of-court statements and appropriately determined that the Government had shown good cause for the victim's absence at the revocation hearing. Accordingly, we hold that the District Court did not abuse its discretion by

---

made no attempt to subpoena one declarant and failed to visit the address or call the phone number of another before abandoning its efforts entirely); *Timmons*, 950 F.3d at 1049–51 (same, where the government knew the declarant's address and made just one "'borderline'" attempt to subpoena the declarant a day before the revocation hearing). But where, as here, the Government offers testimony detailing the lengths it went to secure the declarant's appearance, and "[o]nly the parties' inability to locate the victim [was] responsible for her absence[,]" a court does not abuse its discretion by relying on those facts to determine that the government has shown good cause for the declarant's absence. *Curtis v. Chester*, 626 F.3d 540, 547–48 (10th Cir. 2010).

admitting the victim's out-of-court statements. We will therefore affirm the judgment of the District Court.